**Douglas J. JOHNSON, et al., Appellants,**

v.

**Arne H. CARLSON, Governor of Minnesota, et al., Respondents.**

**No. C2–92–1429.**

Court of Appeals of Minnesota.

Jan. 12, 1993.

Review Granted March 11, 1993.

Thomas L. Fabel, Randy G. Gullickson, Lindquist & Vennum, Minneapolis, for appellants.

Hubert H. Humphrey, III, Atty. Gen., Richard S. Slowes, Asst. Sol. Gen., Sara H. Jones, Sp. Asst. Atty. Gen., St. Paul, for respondents.

Considered and decided by FORSBERG, P.J., and RANDALL and DAVIES, JJ.

## OPINION

FORSBERG, Presiding Judge.

Appellants challenge the item veto by the Governor of the State of Minnesota, of a bill to redirect the division and distribution of proceeds of the tax on taconite and iron sulfides. We reverse.

### FACTS

Iron ore production from taconite and iron sulfides is subject to a special tax which is distributed among various government units and purposes by statute. Minn. Stat. § 298.28 (1990 and Supp.1991). Two special programs of the Iron Range Resources and Rehabilitation Board (Board), the Taconite Environmental Protection Fund and the Minnesota Economic Protection Trust Fund, are the residual beneficiaries of any undedicated revenues generated by this tax. Minn.Stat. § 298.28, subd. 11 (Supp.1991).

In 1990, the legislature imposed an increase in the taconite tax rate for concentrates produced in 1991 and later years. Minn.Stat. § 298.24, subd. 1(b) (1990). The first year of increased revenue went to the economic and environmental funds by operation of the residual provision.

In 1991, the Minnesota legislature enacted new laws concerning higher education services on the Iron Range. These higher education services are to be supervised by the Commissioner of the Board with advice from the Higher Education Committee, which was created by Minn.Stat. § 298.-2214, subd. 1 (Supp.1991). Funding for these services was provided by the following legislation:

Sec. 5. Minnesota Statutes 1990, section 298.28, is amended by adding a subdivision to read:

*Subd. 10a.* **HIGHER EDUCATION FUNDING.** *In 1992 and 1993, the amount of tax attributable to the rate increase under section 298.24, subdivision 1, paragraph (b), since production year 1990, shall be paid to the commissioner of iron range resources and rehabilitation to be used to pay the cost of providing higher education services in the taconite tax relief area under the contract provided for in section 1.*\* **(The language of section 5 beginning "In 1992" was vetoed by the governor.)**

Act of June 4, 1991, ch. 356, art. 4, § 5, 1991 Minn.Laws 2895 (hereinafter referred to as "section 5").

The higher education funding in section 5 was to come from the 1992 and 1993 proceeds of the taconite tax increase. Because the Governor vetoed section 5, the taconite tax increase reverts to the residual provision, and the increased tax revenue continues to go to the economic and environmental funds.

On March 4, 1992, appellants, State Senator Douglas J. Johnson and other interested individuals and organizations, initiated this action against respondents, the Governor and the Commissioner of the Board. Appellants challenge the constitutionality of the Governor's veto of section 5, request that the district court declare the veto null and void, and seek an order giving the vetoed bill full force and effect. Appellants also request injunctive relief prohibiting the Commissioner of the Board from spending any tax revenue described in the vetoed bill for any purpose other than that set forth in the vetoed portion of the bill.

This appeal is from the district court's denial of appellants' motion for summary judgment, and entry of judgment for respondents.

## ISSUE

Did the Governor act within his constitutional authority in exercising an item veto of section 5?

## ANALYSIS

■ The Governor has the authority to item veto pursuant to Minn. Const. art. 4, § 23, which provides in part:

If a bill presented to the governor contains several items of appropriation of money, he may veto one or more of the items while approving the bill.

■ We are guided in our analysis of this issue by a recent Minnesota Supreme Court decision, *Inter Faculty Org. v. Carlson*, 478 N.W.2d 192 (Minn.1991). That decision sets out two general principles. First, the Governor's item veto is an exception to the authority granted the legislature. Thus, this power must be narrowly construed so the executive branch of government does not usurp the powers granted the legislative branch. Second, as the item veto is a negative power, it may not be used "to add to or even to modify the legislative strategy." *Id.* at 194.

Appellants argue section 5 was not imposed upon an item of appropriation and was therefore an improper exercise of the veto power. *Inter Faculty Org.* defines an item of appropriation of money as a "separate and identifiable sum of money appropriated from the general fund dedicated to a specific purpose." *Id.*, 478 N.W.2d at 195. However, this definition carries with it the caveat that its application in future cases may expand or be limited as necessary on a case-by-case basis. *Id.*

■ For several reasons, we do not believe section 5 is an item of appropriation. Since section 5 merely authorizes the transfer of the tax increase funds from the economic and environmental funds to the higher education services, it involves no new appropriation of a "separate and identifiable sum." In addition, the Governor's veto power is limited to " 'items of appropriation,' not of a part or parts of an item." *Inter Faculty Org.*, 478 N.W.2d at 194. The "item" subject to veto in this case is the division and distribution of the proceeds of the taconite taxes to the target area. The bill vetoed involved an individual allocation (i.e., to higher education services) which is only part of the item and is, in the purest sense, an expression of legislative strategy. Finally, the funds in question are to be paid over to the residuary, which does not involve the general fund. The expenditure of funds from the residuary fund does not "appropriate" money otherwise available for state purposes. Therefore, applying the rationale set out in *Inter Faculty Org.* to the facts in this case, we conclude the vetoed bill did not involve an item of appropriation and is not subject to an item veto.

## DECISION

The Governor's veto of section 5 is unconstitutional under Minn. Const. art. 4,

§ 23 because section 5 is not an item of appropriation.

Reversed.